Today, United States v. Doe, No. 13-4274, Mr. Kaczynski and Ms. Irwin. Hold on for just a moment. Whenever you're ready, Counsel. Thank you, Your Honor. I am William Kaczynski, representing John Doe in this case, and I would ask to reserve four minutes for rebuttal. You sure may. Okay. This is a – let's see if I have this semi-right. This is like a – somebody like a grad school exam on habeas. It seems to me if I were – first question is, do we have jurisdiction to issue the Certificate of Appealability? If we do, should we? If we should, is the 2012 motion second or successive? If it is not, then you – should the statute of limitations be told? If it is a second or successive motion based on what happened in 2008, should a Rule 60 motion be granted? In the context of determining whether a Rule 60 motion should be granted, you then get into the theoretical aspects of Begay. Is the Begay claim procedurally defaulted? Is it cognizable on collateral review and there's a circuit split? And did the sentencing court commit Begay error, which would probably require a remand to look at Shepard documents? Do you – is that the right decision tree here or is there something – an issue that we've missed? No, Your Honor. I have characterized this case as a law school exam myself to those that I've talked to about it. Yeah, it's a toughie. Why don't we start with jurisdiction? Yes, Your Honor. The – this court has jurisdiction to consider the issues raised in this case if – and the COA may issue if the – if there is either a denial of a constitutional right for which jurists of reasons could debate or if there's a non-constitutional dimension to it such that there's a fundamental defect, which inherently results in a complete miscarriage. And as I indicated in my brief, I think both of those have been shown. With respect to the denial of a constitutional right, numerous circuits have already issued COAs and issued opinions on the merits, including the Court of Appeals from the Seventh Circuit in Narvaez, which I cited in my brief and which I rely upon for the merits. Whiteside versus – Yeah, the problem there is that you've got Narvaez in the Seventh Circuit and you've got an Eighth and an Eleventh Circuit case that go the other way. And I guess the Fourth Circuit case that may have been helpful is what, in Banknow? That was just decided, Your Honor. How did it come out? That was a difficult split, but the Fourth Circuit decided that the petition was untimely. Okay. So let me come down to – let's assume for the moment we have jurisdiction. Well, let's get back to the other prong of miscarriage of justice. If we look at this case at the original guilty plea, didn't the defendant admit that the assaults were intentional acts as opposed to reckless? And so the Begay argument, if you look at the facts of this particular case and if you look at what was said at the sentencing hearing, which is permissible for us to look at, isn't the career criminal status appropriate because the simple assaults were, in fact, intentional acts rather than reckless acts? Yes, Judge Roth. The argument that the government has made is that there was a mention in the pre-sentence report as to one of the simple assaults and that the defendant didn't object. I don't think it was at a plea proceeding. I think the plea proceedings themselves say very little about the factual basis, but I agree a panel of this court has held in Siegel that the court may look at admissions made to the PSR. My response to that would simply be, first of all, I think – and I'm not arguing with the panel. I'm mindful that this panel cannot overrule another panel. But I just think Siegel expands the proper Shepard documents that this court talked about in Johnson when it overruled Dorsey and enforced Begay, essentially. The Shepard documents don't talk about PSR admissions. The reason that I think Siegel is subject to maybe in bank sometime is that, in this case, the original plea to that simple assault was many years before Begay was on the horizon. It just seems unfair that a defendant would be required to make an objection about something that had no meaning back when it was done. So when you're looking back to 1996 or whenever that simple assault was and you say, well, he admitted that it was an intentional act or that it was a violent act and, therefore, it is counted, maybe he would have jumped up and objected. Well, but he didn't, and it's a record in this case. We can't say, oh, well, if he'd had a good lawyer, he wouldn't have admitted it.  It's evidence before the court. The only thing I would say, Your Honor, is that the simple assault constituted a slapping and a spitting on a person. So with respect to the spitting, was it intentional? I don't know. We don't know from the record whether he spit at the man or whether he spit to the right of the man and the wind blew it. And with respect to the slapping, we don't know. Under Pennsylvania law, a mere touching is an assault. Did he really slap him? Was it forceful? The record doesn't show that because the PSR just says he slapped a gentleman and he spit on him. That's all I have on that, Your Honor. I'm sorry. So you're saying that that is certainly allowed under the way Siegel interprets Shepard? I would like to distinguish Siegel, Your Honor. I've read Siegel and I've looked at it and I would say Siegel goes against looking at the Shepard documents because in this case, it starts to open up factual issues. Unless the court determines that slapping is per se intentional and without more, per se intentional and violent. If we went through all these hurdles that Judge Ambrose mentioned and we got to the merits and sent this case back, the sentencing judge could very well impose the same sentence, couldn't he? Yes, Your Honor, but I don't think that's dispositive. The government has argued that and there are a number of reasons. First of all, Hicks v. Oklahoma is a case in which the jury was charged with sentencing duties and they got it wrong and one of the Oklahoma Supreme Court said, well, you know, they probably would have just reached the same conclusion anyway, so we're not going to grant any relief here. And the Supreme Court said, well, no, because that was an arbitrary disregard of the defendant's right to have a consideration of that by the jury. It was a due process issue. And the other thing is that we don't know that the court is going to sentence Mr. Doe to the same sentence. In fact, I think we know that the court isn't going to do that because the court was very reluctant at sentencing. The court sort of apologized to Mr. Doe's mother, telling her, you know, this is very hard for me to do, this is a very severe sentence. Well, that was the initial sentence, wasn't it? That was the initial sentence. In this case, yes, Your Honor. I mean, that was like 280 months. 260. 260? 262 months. That was reduced by about seven years. Correct. And the other point I would make, if I might, Judge Fuentes, is that I submitted a Rule 28J on Thursday or Friday morning, and I apologize. It's just something that came to my attention, but it's that Persaud case that the Solicitor General has taken the position in Persaud and in Surratt that a sentencing error in connection with a life sentence does present a fundamental defect, warranting habeas corpus relief. And in that case, in both Persaud and in Surratt, the change would be, if it's now sent back, if it goes back, the change would be that instead of being sentenced from a mandatory 20 to life, the change is it would go from a mandatory life to 20 years to life, excuse me, so that the sentence could be the same and the judge could sentence those two defendants to the very same sentence. However, the Solicitor General, in spite of that, and inconsistent with the government's position in this case, has agreed that collateral relief was appropriate. I just have one more point I want to touch with you, which is the withdrawal of the habeas petition. Yes. I can't remember the year, but in 08. And it seemed like he had a discussion with his client, and he went back and told the judge it was going to withdraw. By that point, Begay had been out, I think, by about a year perhaps or more. I think it was pre-Johnson. But the point is, why can't we find that that was ruling on the merits, given that he should have known about Begay, I think. I think the counsel thought he was stopped by Dorsey. Anyway, go ahead. I'm sorry. That's exactly correct, R. But if you look at the record, the reason the counsel gave, and, of course, I cited the tie versus the United States, that's a Second Circuit opinion written by now Justice Sotomayor, and that says that a petition is not a successive or second petition. It doesn't count unless it's been adjudicated on the merits or dismissed with prejudice. And neither of those things happened here. So that opinion goes on to say, well, you can also look at the intent, whether the person withdrew it because the person knew it lacked merit. But that's not in this record. What this record shows is a very, what I think is a confused explanation by counsel as to why this was being dismissed. You know, he told the court, this court in the first instance and the Third Circuit on appeal don't have the capacity to review the validity of either the Pennsylvania or the Ohio convictions, the predicate offenses, in the first instance. So that review here would not generate direct relief for Mr. Doe. I don't know what that means. I think he was simply saying something to cover up the fact that they're getting on with the Rule 35 and they really weren't interested in this, or he wasn't interested in this. So our position is that it was dismissed because, at least as far as I can interpret from this statement, counsel was saying it was procedurally defective, unripe, or not exhausted. But the operative point, I think, is that the defendant in this case was fighting with his attorney at this time. So for the government to say that he voluntarily withdrew it, I think, is incorrect. Although it seemed pretty clear how Judge Ambrose was indicating pretty strongly how she was going to come out. I'm sorry? Judge Ambrose seemed to be indicating pretty strongly how she was going to come out. True. Now the question then becomes, let's assume for the moment it is defined or deemed to be a first habeas petition. Then what came in 2012 would have been a second or successive. One of the thoughts is you possibly could go back under Rule 60, but what effort was made to invoke Rule 60 at that point? At that point, no. A reconsideration. In other words, if it's second or successive, could you have said to the court, go back and review what you did the first time under Rule 60b-6? Yes.  I wasn't counsel, of course, below. So the question is, should a Rule 60b motion be granted? That was one of the points. If the 2012 motion was second or successive, if the answer is yes, should a Rule 60b motion be granted? Yes, Your Honor. Because? Well, because of the merits of the case, the fundamental miscarriage of justice that would ensue, the fact that this is a career offender case, the fact that this gentleman was originally sentenced to serve an additional 12 years more than he would have had it not been, a situation where he was labeled as a career offender. I'm not sure we have enough facts here, but in our case last year, Cox v. Horn, we ruled that we read the Gonzales v. Crosby case of the Supreme Court from 2005 to hold that a change in the law is not enough. You need something more. So that a change in the law without more is inadequate for Rule 60 relief. I mean, clearly you're arguing there was a change in the law as a result of the case. Yes. What might the more be? What could there be in addition to the change in the law that might give your client the ability to suggest that, hey, court, you really should look at this under 60b and revisit what was done with regard to the first motion back in 08 in connection with Begay. Begay came out what, April 16th of 08? April 16th. Okay. Yes. Your Honor, I would just say the constitutional issues, I think there's a clear due process violation. The fact that the judge's discretion was limited because the judge was required to give a mandatory minimum career offender. This is a mandatory minimum case, and under that basis, I think it should go back. We'll hear from your opposing counsel and get you back on rebuttal. May it please the Court, Laura Irwin from the U.S. Attorney's Office in the Western District on behalf of the government. I could not agree more about the nature of the difficulty of this case, but I think the easiest and most straightforward answer is that this court should vacate and return to the district court with instructions to dismiss for lack of jurisdiction, and here's why. When he filed his second petition, the 2012, he was required to obtain authorization or certification to make that filing. He never did that. He never requested that. When Mr. Doe failed to do that, he deprived the district court of jurisdiction, and at this point, as Judge Fuentes noticed this morning in the first case, if the district court didn't have jurisdiction, this court can't have jurisdiction. We know that this is a second or successive petition for two reasons. One is because the district court decided it on the merits. It's clear if you look at the entire record that that's exactly what was going on. The portion that Mr. Kuczynski quoted, he said, I don't know what this means. I don't know what it means either, but if you look at the rest of that record, starting from the minute the hearing started, Mr. Doe's counsel said, I've reviewed this claim. It has no merit. This claim was couched in effective assistance with various prongs. I found nothing to have merit. The only possible thing would be addition of a shoot departure claim. I would like to amend my motion to say that, but otherwise, my client understands that he is not entitled to relief in this case. Let me just digress for a second. It's actually conceivable that Judge Ambrose was talking when she said, I don't think you can win. She may have been speaking as to the shoot claim as opposed to the baguette claim. Well, I suppose if you look at that statement in isolation, but it's very clear. She says at one point, I am not going to grant him career offender relief today. And so I think if you take the record as a whole, the fact that Mr. I'm sorry, that the defendant was given an opportunity to confer privately with his client and his lawyer, he knowingly and voluntarily agreed that that's what would happen today on that given day. And we know that from another perspective as well. If you look at this entire record again, the issues before the district court were the 2008 motion as well as the 35B motion. When you look at it, it's clear, obviously, 35B is discretionary with the district court. It was a sound judgment on the part of counsel at that point to say, look, I know we have an uphill battle on the baguette. Because keep in mind, at this point, the baguette is not directly on point with this case. The baguette is a procedure. The Supreme Court has changed the procedure. So defense counsel doesn't know at that point that he's got a surefire winner. But he senses that the district court is going to grant relief on the cooperation motion. And when you get to cooperation under Statutory Provision 3553E as well as Rule 34B4, the mandatory minimums statutory or guideline go away. So at that point, the district court, once she granted that motion, could have sentenced him to probation, to time served. So we know that counsel made the choice of, hey, I can get no boundaries or I can try to continue with this one boundary. And he said, let's go with this one with consent of his client. The district court then sentenced him. And so that's our position, that the 2008 motion decided on his merits. Hey, we're, by virtue of withdrawing it, yours, I think the case of support, that his 2255 motion was denied or deemed denied. Right. And as you pointed out with my opponent, it's pretty clear that Judge Ambrose was going to deny it even if it wasn't withdrawn. And so assume that's correct. And the Supreme Court, however, has overruled our SEPARO decision. SEPARO said we didn't have jurisdiction in this type of circumstance. We'd like jurisdiction over a defective certificate of appealability if we granted one, right? Well, there's been no certificate granted in this case. I do want to be clear. The question posed by the court was, how does Thaler affect SEPARO in terms of can we exercise jurisdiction in order to determine? It seems like Thaler overruled SEPARO. Right. Where do we stand now? Do we have jurisdiction to decide whether to grant a COA? And our position is yes, but also recognize that there is no jurisdiction at the get-go for this wholly separate reason, and that is that he failed to either request, and I think even by failing to request it, the court lacked jurisdiction, but he failed to obtain certification and authorization to go forward with a second or successive petition. I'd be happy to discuss why it's second or successive in terms of the new rule. We've talked, if the first, if 08 is deemed to have been decided on the merits and 2255 was denied, that's the first, and then what happened in 012 would be second or successive. That's correct. But what I'm not understanding is why you think we don't have jurisdiction to consider granting a COA. You do. I'm sorry if I said that. I misspoke. You do have jurisdiction to decide whether to issue a COA under Thaler and its interaction with SEPARO. You do have that. That's the position in our brief, and it remains our position. All right. So then your argument with respect to jurisdiction is what then? To answer the court's question, yes, if that were purely the issue, you would have jurisdiction to decide whether to issue a COA, but there's more to this case than that, and that is that the district court lacked jurisdiction, and therefore this court lacked jurisdiction because it was a second or successive that was not authorized. And then my then question was, should we consider a Rule 60 route? In all honesty, I never thought of that. With all the other issues in this case, it never occurred to me. I'd be happy to research it. You heard me say at the outset, you heard Mr. Irwin, this is like an exam. Yeah. I'd be happy to brief it if you'd like me to do that, but I would not be representing my client adequately if I gave an opinion on that because, frankly, at this moment, I can't remember even what Rule 60 says. On the issue of miscarriage of justice, would there be a miscarriage of justice, or has the defendant admitted to acts which were intentional assault as opposed to reckless? Your Honor, I will answer your question, but I just want to point out to the court, before we can get to those questions, you have to issue a COA. You have to find that he has shown a constitutional injury or under subsection 4 that he otherwise is entitled to collateral relief. I'd be happy to discuss that in greater detail, but keep in mind that you lack jurisdiction to even answer the question that you have. Okay, but I'm considering whether we got a Rule 60b motion that should be granted if there's going to be a miscarriage of justice. And is there a miscarriage of justice if he has admitted to intentional acts rather than reckless acts? Well, to answer your question most directly, there is no claim by Mr. Doe. There never has been a claim by Mr. Doe of a Shepard problem in this case. So for him to now claim that he improperly, in violation of Shepard or anything else, admitted to these offenses, there's no foundation for the court to review that in any context. It's not in any motion. Our second position is that Segal remains good law, and if I've not answered your question, please let me know. Well, what he admitted in the pre-sentence report, is that sufficient under the Pennsylvania statute to make this simple assault an intentional assault rather than a reckless assault? Yes. The answer to that is yes, and we addressed that in our brief. It's in the last section about the application of Marrero to this case to show that, in fact, it shows knowing if not intentional conduct. So I'd like to go back to the next question. If the court doesn't agree with me that it lacks jurisdiction because this is a second or successive that was not authorized, the next question is, can the court issue a COA? And we're familiar with the standards. We know from Thaler and Millerell that he has to make a substantial showing of a denial of a constitutional right that's debatable and the mechanics of that. One thing my brief did not make clear, and I would like to clarify that now, and I apologize for it not being clear, is that that analysis must precede and is separate from the analysis of whether or not there's a cognizable claim. Because if you don't have jurisdiction, you can't get to cognizability. Part of the reason why it's so confusing is the terminology is the same. The words miscarriage of justice are used throughout both of those analyses. Whether they are different at this point would be like trying to determine how many angels can dance on the head of a pen. For our purposes, I think we can say that they're the same, but they are separate and distinct. And it's our position that Mr. Doe has not made any showing, much less a substantial showing, of a denial of any due process rights. And here's why. This case turns on some very specific facts. So I'm not abandoning the cases that are out there. Spencer, which I don't know if the court received my 28-J, but Whiteside and Spencer have both been decided en banc. Spencer, Sunbear, we completely... But you do have the circuits, but you've got the Seventh Circuit going the other way. Right, right. We certainly endorse the reasoning of those opinions. But this case is different, and here's why. There was an 851 filed in this case. That meant that Mr. Doe has to serve an eight-year term of supervised release. He has to serve that eight-year term no matter what. Even if he was resentenced as a career offender, that remains in place. He's never challenged his 851. One month from today, he will be released from a halfway house. And counsel and I discussed before we started this morning whether or not we have a mootness issue, and I'd be happy to brief it. I don't think you have a mootness issue if you still have supervised release. But I understand what you're saying. Under Spencer v. Canada, that's probably true to the extent that there remains an injury. But whether or not there's a cognizable injury on habeas, that he's going to have an eight-year term regardless of whether he's qualified as a career offender, that would be our position that that is not an injury. Our second point that is very unique to this case is the Rule 35b motion and its resolution. Once that was decided, in our view, that cured the problem of having a career guideline kind of cabineting the discretion of the district court. Under 3553E and Rule 35b-4, those things were taken away at the Rule 35 resentencing. The district court said to him, even if you weren't a career offender, it doesn't look pretty. It doesn't look good for you. She recognized that she was without, throughout the discussion at that hearing, that that's what happens when you get no cooperation. Those things are taken away. She sentenced him to 180 months. So it's our position that this is unlike a case that might, you know, it is a pre-Booker case, but those facts take this outside of what the other cases look like, and they show that he doesn't have a constitutional claim. He has no injury that's sufficient to give him a COA for purposes of habeas under 2255. One of the problems I have with the brief that you filed, when you say that you cited about 12 cases or so on page 37 of your brief that sentencing claims are not cognizable on collateral review, but of those 12 cases, actually only one, Sun Bear, in the Eighth Circuit, really supports your position. Because on 11 of the 12, there was a default, and career offender status was not an issue. So I don't understand how those cases... Now, since then, you do have the Eighth and the Eleventh Circuit, and now the Fourth. But what made you think that those cases were all supportive of your position? Well, from the general principle that even this court in Cipro, and this part of Cipro remains good law, the court said guideline mistakes are not generally cognizable. There was a footnote that said there may be an outlier, but the general rule has been since the advent of the guidelines that those mistakes are not cognizable. This new development of law, which, as you indicated, is developing virtually as we speak, has taken a new look at the career offender and asked whether that doesn't take it outside of the general norm that everyone seems to have recognized, to say that, yes, these are cognizable because they're different. And our position is, once you get past and you've found a constitutional violation, which, again, we don't think you can, the best result would be to dismiss the case for lack of jurisdiction. If you get to the issue of whether it's cognizable, we need to really think and talk about what it is that makes a career offender designation that much different that requires this separate set of cases. Is the injury that bad? Is it that gross? At this point, there's quite a bit of additional time that was spent. But why should guideline errors be treated any differently than errors under the rules of criminal procedure, which in the Supreme Court's case of Pogaro, that's P-E-G-U-E-R-O, are cognizable on collateral review when there's a showing of prejudice? Well, I'm not familiar with that particular case, so I'm not sure which rule it is. But even before Booker, district courts had discretion to go outside of those guidelines. And there's plenty of Supreme Court authority. Rodriguez, which is cited in our brief, Kuhn, where the Supreme Court has said, while they are mandatory, there is discretion. It's cabined by an abusive discretion standard on review. A district court, for adequate reasons, can go outside of the heartland. So our position would be that it's because there is that discretion. It's greater now. There's no doubt about it. But it's greater now. But it did exist before, and that's where we would draw a sharp distinction between the Seventh Circuit and Narvaez. And in our case, they're both pre-Booker, but there is discretion. The notion that the district court could not, under any circumstance, go below the top of the guideline or the bottom of the guideline range is incorrect. And, as I mentioned earlier, we believe that any type of cabining that was inappropriate was eliminated by the Rule 35 resentencing. Thank you very much. Thank you. On rebuttal, Mr. Irwin. Yes, thank you, Your Honors. I just want to mention a couple of points, if I might. With respect to Judge Ambrose's comment a few moments ago about a Supreme Court decision, there is the Barons v. United States decision, which is cited by the dissent in Spencer, which is at 375 U.S. 162. And there the Supreme Court found that 2255 relief was okay, was applicable to set aside a sentence below the statutory maximum for a non-constitutional violation. And the violation there was a federal rule requiring the defendant's presence at sentencing. That rule was not followed, and so the Supreme Court found it's cognizable. Also, Your Honors, I would point the Court to the dissents in Spencer because I think that the majority opinion in Spencer, I think, is flawed. And the dissents in Spencer, had they been out back this summer, I would have just photocopied them and put my name on them and used them as a brief because I think they absolutely make the case as to cognizability and as to the unique, distinct nature of the career offender and why that deserves to be taken out. And the dissent also goes through, there are two or three dissents, but the dissents also go through the Supreme Court cases and statewide. It's perfectly permissible to make the decision and make the demarcation that a career offender error is something that should be cognizable and remediable. I just want to try to touch, if I might, just on one matter, and that has to do with tolling. The government, we made a tolling argument, and the government has said that, well, you know, it's 40 months from the date that Begay came down to the date that he filed his 2012 petition. But I think the operative time period is not from that date, but from the date that Mr. Doe was before this Court raising a Begay issue. And he was here. This Court decided, because it came up as a Rule 35 issue, that it was inappropriate for this Court to also rule on Begay at the same time and suggested pre-Lloyd that he might be able to come back later on the Begay. And maybe that's another reason for Rule 60, as suggested by Judge Ambrose. I also would like to brief that issue if the Court is interested in it. If you do wish to brief it, today is the 12th. How about a week from this Friday? So this Friday is the 16th, is that correct? So a week from Friday would be the 23rd. At 4 p.m. on Friday the 23rd, if you each want to submit something with regard to that under Rule 60, in connection with Rule 60, excuse me, make it no more than five single-spaced pages. Five to what, I'm sorry? Five single-spaced pages. Thank you for that, Your Honor. And I don't know if you want to add anything with regard to the equitable tolling. You can add that, and I suppose you can do it. I didn't see a whole lot there, but maybe I'm wrong. Do you want to add equitable tolling as opposed to Rule 62? Yes, Your Honor. All right. I did address it in my brief, but some things have come to my attention since then. All right. Well, then let's make it seven single-spaced pages to deal with both of those issues. And Mr. Irwin is going to reply. Mr. Irwin, do you want to reply or file at the same time? It would be better. Do you want to wait? Reply. Okay. Then if he files something by the 23rd, could you file something by Friday the 30th? Is that possible, or do you want more time? That's fine. Okay. Can you address mootness? Yes, both issues. Seven single-spaced pages. He's going to address the – sorry, mootness. He's going to address equitable tolling. You said mootness. Right. No need to address mootness in my view. Okay. So it would be equitable tolling and Rule 60. Thank you, Your Honor. Okay. Thank you. Anything further? No, unless the Court has any questions. No. Thank you very much. It's a very difficult case, and we can use all the help we can get. So thank you for being here. It sounds like you're not doing all that well. May you take the rest of the day off. Thank you. We'll be set.